General Dynamics Information Technology Company Incorporated Good morning. We would ask for 5 minutes for rebuttal. You may. Your Honor, this is a Title VII case, a racial judge granted summary judgment on behalf of the defendant. We feel like the record does contain some evidence that a jury could conclude that Mr. English was discriminated against and was subject to a hostile work environment. Now specifically, I'd like to get to the cut to the chase as well, Your Honor. There is initially when Mr. English went to work for the coworker named Jim Rogers. He asked to meet with his supervisor. They did in fact meet and met on three occasions. He started in December, they met in January, they met in February, they met in March. Nothing from the record says that anything was successful from those meetings. And none of those meetings involved an allegation that this treatment was based on race. That's right. Matter of fact, he didn't link this to race until the day before he filed his EEOC complaint. Yes, Your Honor, that's correct. So how do we determine that this poor treatment, seems to be no dispute that this white janitor was a jerk. How do you tie that then to race? Is it true that he was a jerk to everybody? No, Your Honor, we feel like he was cutting up with other white employees. We think the record reflects that. What does that mean, cutting up? Joking? Joking. For example, there was a word like kiss my a and things like that. They would laugh after that was done. Now that's reflected in Mr. English's deposition. The thing that really gets me, I think the thing that disturbs me most about it, and Mr. English goes into 14 pages in his deposition about an assault that occurred in the end of March of that first year. Whereby he was in there and six feet, four to six feet away from his supervisor, Mr. Dotson. And Mr. English is there, they're breaking down boxes, cardboard boxes. Now the boxes that they're breaking down are several inches thick. Mr. English makes a comparison to some papers that are on the council table during the deposition. Mr. Rogers knew that Mr. English had had surgery on his kidneys right before that. Mr. Rogers intentionally, according to Mr. English in his deposition, takes these boxes and strikes, Mr. Rogers strikes Mr. English across the back where he's had this surgery. Mr. English gathers himself back up and looks across the way at his supervisor, Mr. Dotson, and is thinking in his deposition, he says that why isn't he acting? Why isn't he doing something about this? Nothing racial said at that point. No, there's not. I mean the problem is, and we're talking about the mouse. And nobody is seeking to excuse that behavior by Rogers, but how, what is the connection between that behavior and Mr. English's race, aside from the fact that Rogers is white and in English is African-American? Your Honor, the district judge goes to some length and says he treated everybody like that. He didn't, he didn't assault anybody else. He didn't hit anybody else. So it becomes racial because of this, because of the nature of the conduct? Yes, sir. And are there any cases that say that? Well, we quoted a Third Circuit case, the Almond case, where there's racial, not racial epitaphs used where there, there, there. That's the code word case. Yes, sir. So clearly you can say certain things that on the face of it may not be racial, but they're code words for race. I don't think anybody disputes that. That didn't happen here, right? That's right. You're not claiming that, that these assaultive conducts that probably violated state law, you're not claiming they were a code for race, are you? Your Honor, I think that there are people like Mr. Rogers who understand, I mean, the defendant says they were providing information about discrimination, what you should do about discrimination. I think that there are people out there that, that get it and know that I can't use words like that. And so they do other things like what Mr. Rogers has done here, although he didn't use any code words, he assaulted him. He didn't assault any white employees. He cut up with the other white employees by using curse words and things like that. But what he intimidated, he tried to intimidate Mr. English. Oftentimes at this court, we're interested not only in connection with the case at hand, but we're interested in where our opinion, how it might be used in other cases. So let me suggest to you that if we were to hold the way you are asking, that it could be used to say that anytime a white worker assaults a black worker, or anytime a black worker assaults a white worker, for that matter, that because there's an assault and because they are of different you're asking us to do to represent that proposition as a matter of law. Well, your honor, I don't think we're asking that. I think you take the totality of the circumstances. The assault is key. I think the assault is a big thing. But it's also the way that he was treated in the workplace, and that the white workers weren't treated that way. Well, he was treated poorly. Nobody disputes that this conduct is inexcusable. But does it matter that for whatever reason, the white worker seemed to have laughed it off, and this worker did not? Does that make it racial? I think that it can, your honor. Coupled with the totality of the circumstances, with an assault. I mean, he's clearly... So if the white workers say, ah, that's just Rogers. Guy's a jerk. We're going to laugh it off and hope he goes away. But the African-American worker, for whatever reason, isn't going to laugh it off. He takes this seriously. That then turns what seems to be equal conduct into something based upon race. It can, yes, sir. And do you have any authority for that? No, sir. There's a knife-pulling incident. Yes, sir. That's right. There's also a knife-pulling incident that occurs after the assault, and that wasn't told to his supervisor. I think as these instances kept escalating and kept getting worse, after the assault, Mr. Rogers... I mean, Mr. English finally gives up and says, I don't know that my employer's going to do anything with any of these things. And so he kind of lets it go. But that shows that he was having to look behind his back and worry about what Mr. Rogers was going to do to him. He had assaulted him. He was afraid that he might come after him again. Look, I don't think there's anybody on this panel that's not offended by Mr. Rogers' conduct, all right? Yes, sir. He was removed before Mr. English left the company, correct? Yes, sir. But it took some time for that to happen. I mean, in the brief, it appears that that occurred in December, and just immediately they let him go. Within a month later, there was six months that occurred after Mr. English brought this to the company's attention that Mr. Rogers was let go. And then he was let go simply because of downsizing. It wasn't as a result of any of these things. As a matter of fact, Mr. Green, the second-level supervisor, never believed Mr. English in some of these things that were occurring. We did complain about that in the retaliation claim, but you've dropped that on the appeal, right? The corporation here makes a point, correctly or incorrectly, that Mr. English testified that notwithstanding this boorish behavior or worse on the part of Rogers, that it did not interfere with his job, and I've forgotten a couple of other things that he said, which seem to also undercut the claim that this was what we define to be a hostile work environment. How do you address that? Yes, Your Honor, he goes back, and he does say that I suffered some injury, I had problems with that injury. He goes back and he says, I had to watch my back. I was worried that Mr. Rogers was going to come after me later. That did impact him. I think, like a lot of workers, what he meant by that, taking this in the light most favorable to Mr. English, is that he still worked hard to do his portion, even after they were divided apart and given separate duties, that he still had to watch his back and get his job done, get his portion of the job done. So you think he clarified his testimony in a latter part of the deposition then? Yes, sir. And did you cite to that? It's page 139, I think, Your Honor, in the deposition, that he couldn't turn his back on him, that he was concerned enough about it. On the 113 to 127, he discusses having to go to the doctor as a result of his injury. All right, so that's where we would find it, 113 to 127? On the assault, yes, sir. All right, thank you. Good morning, Your Honors. Good morning. May it please the Court, my name is Sarah Belger and I represent Appellee General Dynamics Information Technology. Summary judgment was properly entered in this case because Mr. English failed to show a disputed material fact on his claim for racial harassment on three separate elements. First, he failed to show that the alleged harassment, which was by a co-worker, Mr. Rogers, another janitor, that the harassment that he suffered was based on his race, and I think the panel has raised that during earlier arguments, that it was based on his race rather than a garden variety personality conflict in the workplace. And as this panel is aware, garden variety personality conflicts are not things that are governed by Title VII. The Sixth Circuit has ruled on that in Perkins v. Harvey and also in Michael v. Caterpillar. Second— This is more than garden variety personality conflict. Wouldn't you agree? I think it's a personality conflict, Your Honor, but it has to be based on race. That's what the standard is in Williams v. CSX, and only conduct that is based on race, this Court said two years ago, can be considered as part of a hostile working environment claim. So if you go to the facts of Williams v. CSX, in that case, summary judgment was affirmed in favor of the defendant, and you had multiple instances of race-based comments by a supervisor. Specifically, a supervisor told plaintiff that she was a Democrat only because she was a black woman. The supervisor said that Jesse Jackson and Al Sharpton were monkeys. They told her they wouldn't pay for her education because she was a single black mom. They said, why can't black people name their kids something people can pronounce? And finally, they said black people should go back where they came from. There were several—those were all said by supervisors. Then a different supervisor said to the plaintiff, who was also a janitor, by the way, that she had to do certain tasks that she found that she didn't like to do, such as cleaning a bathroom with an improper tool, not getting reimbursed when damage to her vehicle occurred, or having to clean feces off the wall. The court very clearly stated in that case that only harassment based on the plaintiff's race could be considered as part of this hostile working environment. The court said those other things, those duties that she had to do, could not be considered, and it went back to the comments made by supervisors, and they said that's not severe or pervasive under the standard, and they held that summary judgment was proper. The second thing that— There are two Williams cases. That's Williams v. CXS. Williams v. CXS, Your Honor, 643 F. 3rd 502. It's interesting that in your brief, you only cited Williams from the standpoint of citing what the elements are. I think we cite it later as well, Your Honor, but it is, I think, very instructive on the issue of both what is race-based conduct and also what can be considered, and also what is severe and pervasive. Basically, this whole case is about conduct that's not explicitly race-based, and the plaintiff trying to say, or Mr. Rogers trying to say, that General Dynamics knew that that was race-based or should have known that it was race-based, even though there was no explicit conduct to that effect. So, you know, the court has asked where do we draw the line, and I think that's very interesting here. Basically, what Mr. English is claiming in trying to get this court to rule is anytime you have a disagreement between people of different races, or you could extend it further, a disagreement between people of different religions or a disagreement between people of different genders, that that automatically signals to an employer that it has to be based on that protected category. It has to be based on race, and therefore triggers an investigation requirement, triggers the requirement by the employer to take corrective action and do what it can to end the harassment. And I don't think that is what the case law states, and I don't think that's what Title VII was meant to protect here. Did General Dynamics adequately deal with the complaints that Mr. English made? Sure. How so? Your Honor, they did. When Mr. English started working in December 2007, he and Mr. Rogers worked together for two and a half years. There's no dispute that he did complain, but he didn't complain for a year that it had anything to do with his race. And after he complained, there were three, January, February, March, there were three meetings between Mr. Rogers, Mr. English, and their white supervisor, Mr. Dodson, where they talked about how do we get you guys to get along better in the workplace, and when Mr. English finally, in December 2, 2009, mentioned the word discrimination to an HR representative at General Dynamics, the HR representative performed an investigation. She went back to Mr. Rogers, Mr. English, Mr. Dodson, and Mr. Dodson's supervisor, Mr. Green. She talked to all of them who said, yes, there are disagreements between these two men. They don't like each other. We have already counseled Mr. Rogers about being gruff and not treating people well in the workplace. Mr. Dodson told Ms. Brayman that in November 2009, he had already counseled Mr. Rogers about that. And then during the investigation that Ms. Brayman did, Mr. Dodson told her, look, we are now going to separate these two gentlemen. They obviously can't work together very well. We're going to make them have their same job duties in entirely different parts of the building so that they don't have to interact very much. And then on December 14, they had a team meeting where all the supervisors and Mr. Dodson, and Mr. Rogers and English sat down and said, how do we get you guys to work together moving forward? So when the employer was put on notice, they performed an investigation under their policies, and they acted appropriately in order to minimize any interaction between the two men. Also in- It does seem sort of curious that they would have kept Rogers on as an employee. Forget the allegations of race, which probably hadn't been raised at that point. Why did they keep on him, somebody that's whacking somebody with boxes and pulling knives and throwing things and yelling? Well, they didn't end up keeping him. I mean, they counseled him in November 2009, February 2010, they counseled him. They gave him a final written warning in April 2010, and then finally laid him off rather than laying off Mr. English in late May, early June 2010. But why did they keep him? Well, there's undisputed testimony by his supervisors that actually he was a great janitor. He had suffered a stroke. It was in the record that he had suffered a stroke. They were trying to help him move forward from that stroke. They hired Mr. English to try to lessen his job duties so he didn't have to clean the whole building. This was an Army base. There was a huge facility that one person really couldn't deal with, and so they hired Mr. English to try to help with his job duties. So eventually- So your claim is they put up with this activity or actions for about five months as they're working with him? Well, I mean, there's no dispute, Your Honor, that there were multiple meetings between Mr. English or Mr. Rogers' supervisors and Mr. English and Mr. Rogers saying, how can we deal with each other? You need to be less gruff in the workplace. You need to treat people better. I mean, there's multiple meetings in the record on that, and eventually, after multiple steps of discipline, they did let him go. Your Honors, if I may, to kind of go back to what the- Is there a post-stroke when he makes the comment about, I'd kill any black or Mexican man that got with my daughter? So the stroke happened before Mr. English was hired, before December 2007. The comment that Your Honor is mentioning was never reported. It's undisputed that it was never reported to anybody at General Dynamics. So you've got a single racially-tinged comment that was never reported. We have construed the evidence most strongly in favor of what the plaintiff's saying at the time. Sure, Your Honor. But it goes within the context of there's one race-based comment that was never reported. So how is General Dynamics supposed to know this is a race issue when Mr. English admits that he never told anybody about that one single comment? If we go to- let's look at the allegations that are specifically in the record. I mean, the undisputed evidence shows that Mr. Rogers was rude to everybody, not just Mr. English. Mr. Rogers told Mr. English to kisses A on multiple times. That's undisputed. But he also testified that he heard Mr. Rogers say kiss my A to a white employee. Now- How about the come over here ML? Did he say that to other people too? There was nothing in the record, but Mr. English testified that he said that once. So it was one instance of get over here, MF. But there is evidence in the record that Mr. Rogers raised his voice to his own supervisor, told his own supervisor in a meeting in front of Mr. English that he didn't like his supervisor. I don't like you is basically what he said, that he vented his anger and raised his voice. That another- he reacted negatively to at least two other white employees. That the way he said kiss my A to another white employee triggered an employee to say, what's wrong with that guy? He's really got an attitude. So there's evidence all over the record that he was treating all employees badly, not just Mr. English. And it really indicates that there's nothing to do with race here. There's only race-based comments or conduct can be considered as part of a hostile working environment claim. So we're left with one comment here, I'll kill any black or Mexican who gets with my daughter, that was never, ever reported. So, your honors, you've got that, and then you've got, there's no evidence that that one comment was severe or pervasive enough to trigger a hostile working environment claim. Mr. English testified at his deposition, and it's page 139 and 140. He said, although he had to watch his back, so to speak, he never had a problem getting his work done. He still got all of his work done. That comment is fatal to his argument that any harassment altered the terms and conditions of his employment, which is what is required here. Finally, he failed to show that General Dynamics knew about or should have known about the alleged, quote, racial harassment and failed to take corrective action. If your honors have no other questions. Thank you. Thank you. Thank you. Just briefly, your honor. There are several instances that Mr. English brought up in the deposition when they asked, when were you called MF or did those things happen? He would say, one time, blah, blah, blah, you know, one time this occurred. And so Mr. English was trying to get across that there was this one instance that that happened and that's what he was quoting from. So he didn't say that there was just one instance. He was just trying to quote a time that it occurred. There's also. I take it there is no evidence that it did, in fact, happen more than once. He just says at one time that this, as an example, that this happened. One time, I recall, blah, blah, blah. And so his intent was that there were several instances, but he remembered one time and that's when he quoted when counsel asked him the question. I am using this as an example. I only remember one, but there are more. So, I mean, at face value, he said one time. Yes, sir. That's right. And also on page 225 and 226 of the deposition, when the comment was made about there was another employee that observed a kiss my a comment to the other employee and what is Mr. Rogers problem? That was another black employee commenting to Mr. English about what is Rogers problem, not just to that employee, but the way that Mr. English was treated by Mr. Rogers. Your Honor. Was your client aware that Mr. Rogers had had a stroke? Yes, Your Honor, he was. The comparative evidence about how this harasser treated other employees versus Mr. English, it's clear and the light most favorable to Mr. English that there are certainly facts that are in dispute that a jury could reasonably find a prima facie case, Your Honor. We would ask that you remand this back to the district court for hearing. All right. Thank you. Case will be submitted.